

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Chet Brooks, Chairman
Committee on Human Resources
Texas State Senate
Room 412, Archives Building
Austin, Texas   78711

Opinion No.  MW-573

Re:  Validity  of  Board  of
Medical  Examiners  rule  on
licensure qualifications

Dear Senator Brooks:

On November 11, 1981, section 163.1, rule 386.19.00.001 of the rules and regulations of the Texas State Board of Medical Examiners became effective.  This rule provides in part:

> (a)   The board at its discretion may grant a license to any reputable physician who meets the following criteria:
>
> (1)   is at least 21 years of age;
>
> (2)   is of good professional character;
>
> (3)   has completed 60 semester hours of college courses other than medical school, such courses to be acceptable to the University of Texas Health Science Centers for admission to medical school;
>
> (4)   has graduated from an approved medical school...;
>
> (5)   has successfully passed a medical examination and Texas medical jurisprudence examination required by the board...; and
>
> (6)   has successfully completed a one-year program of graduate medical training approved by the board....

Tex. State Bd. of Medical Examiners, Rule 386.19.00.001, 6 Tex. Reg. 3971 (1981) (to be codified as 22 T.A.C. §163.1)

You have asked whether parts of this rule conflict with sections 3.04 or 3.05 of the Medical Practice Act, article 4495b, V.T.C.S. Section 3.04 provides in part:

> (a) An applicant, to be eligible for the examination, must present satisfactory proof to the board that the applicant:
>
> (1) is at least 21 years of age;
>
> (2) is of good professional character;
>
> (3) has completed 60 semester hours of college courses other than in medical school, which courses would be acceptable, at the time of completion, to The University of Texas for credit on a bachelor of arts degree or a bachelor of science degree; and
>
> (4) is a graduate of a medical school or college that was approved by the board at the time the degree was conferred.

Section 3.05 provides in relevant part:

> (a) All examinations for license to practice medicine shall be conducted in writing in the English language and in a manner as to be entirely fair and impartial to all individuals and to every school or system of medicine. All applicants shall be known to the examiners only by numbers, without names or other method of identification on examination papers by which members of the board may be able to identify the applicants or examinees, until after the general averages of the examinees' numbers in the class have been determined and license granted or refused. Examinations shall be conducted on and cover those subjects generally taught by medical schools, a knowledge of which is commonly and generally required of candidates for the degree of doctor of medicine or doctor of osteopathy conferred by schools or colleges of medicine approved by the board, and the examinations shall also be conducted on and cover the subject of medical jurisprudence. On satisfactory examination conducted as required by this Act under rules of the board, applicants shall be granted licenses to

practice medicine. All questions and answers, with the grades attached, shall be preserved for one year in the executive office of the board or such other repository as the board by rule may direct. All applicants examined at the same time shall be given identical questions. All certificates shall be attested by the seal of the board. The board in its discretion may give the examination for license in two parts.

(b) In addition to the requirements prescribed by this Act, the board may require applicants to comply with other requirements that the board considers appropriate and establish reasonable fees for examination. (Emphasis added).

It is not clear from the terms of the rule whether its requirements are to be met before or after taking the exam. However, section 3.04 states requirements that an applicant for licensing must meet in order to be eligible for examination. Section 3.05(a), quoted above, mandated the issuance of a license "[o]n satisfactory examination" unless, of course, the applicant is disqualified for one of the reasons set out in section 3.08. Thus, the rule necessarily is an attempt to add to the requirements that must be met to be eligible to take the examination.

Your questions are as follows:

1.   Is the language 'at its discretion may grant a license' in board rule 163.1 consistent with the apparently mandatory language 'shall be granted licenses to practice medicine' in section 3.05(a) of the act?

2.   Is the requirement in the board rule that courses must be 'acceptable to the University of Texas Health Science Centers for admission to medical school' inconsistent with the prescribing language of section 3.04(a) that courses be 'acceptable, at the time of completion, to The University of Texas for credit on a bachelor of arts or a bachelor of science degree'?

3.   Is the board requirement for a 'one-year program of graduate medical training' inconsistent with the enumerated list of qualifications prescribed by section 3.04(a)?

4.    If the language of section 3.05(b) is read to permit the board to add qualifications other than matters over which applicants are to be examined, does this conflict with article XVI, section 31 of the Texas Constitution, which gives the legislature the authority to prescribe qualifications?

If not, is there any limitation on the board which would prevent it from adding two, three, or more years of training beyond the medical school graduation required by the act?

We conclude that parts (a)(3) and (a)(6) of the board rule are invalid.  For the following reasons, we believe the Board of Medical Examiners lacked statutory authority to promulgate these particular requirements.

The Texas State Board of Medical Examiners is an administrative agency.  V.T.C.S. art. 4495b, §2.01.  A cogent summary of the principles governing the rulemaking authority of administrative agencies is contained in section 11, 2 Tex. Jur. III Administrative Law, which cites State v. Jackson, 376 S.W.2d 341 (Tex. 1964), Railroad Commission v. Fort Worth and D.C. Railway Company, 161 S.W.2d 560 (Tex. Civ. App. - Austin 1942, writ ref'd w.o.m.), and other cases for these propositions:

Generally the powers of an administrative agency are derived entirely from legislative enactment.  The agency has only such powers as are expressly conferred on it by statute together with those necessarily implied from powers and duties expressly given or imposed.

The rulemaking power of administrative agencies does not permit the enactment of regulations which are inconsistent with the expression of the lawmakers' intent in statutes other than those under which the regulations are issued.  Consequently, when the legislature acts with respect to a particular matter, the administrative agency may not so act with respect to the matter as to nullify the legislature's action, even though the matter is within the agency's general regulatory field.

Although a statute conferring administrative authority will generally be liberally construed, the agency must not go beyond the clear intent of

the legislature.  It may not enlarge its powers by
its own orders....  (Footnotes omitted).

We have found only two statutory provisions that could
conceivably authorize these board rules.  Section 2.09(a) of article
4495b provides:

The board shall have, in addition to other powers
and duties contained in this Act, the powers and
duties prescribed by this section.  The board may
make rules, regulations, and bylaws not
inconsistent with this Act as may be necessary for
the governing of its own proceedings, the
performance of its duties, the regulation of the
practice of medicine in this state, and the
enforcement of this Act....  (Emphasis added).

Section 3.05(b), which is set out above with section 3.05(a),
provides:

In addition to the requirements prescribed by this
Act, the board may require applicants to comply
with other requirements that the board considers
appropriate and establish reasonable fees for
examination.  (Emphasis added).

We first consider section 3.05(b).  Arguably, this provision
could be read as authorizing the Board of Medical Examiners to require
applicants for the medical examination to comply with any other
requirements that it considers appropriate, including additional
requirements to become eligible to take the examination.  In our
opinion, however, it is actually a limited grant of authority that
simply permits the board to promulgate additional rules relating to
the medical examination itself, i.e., its scope, the manner in which
it will be administered, etc.

It is significant, in our opinion, that this provision appears in
the middle of a section that deals solely with the medical
examination.  The provision is limited by its context.  We believe
that if the legislature had meant for this provision to supply the
broad authority suggested above, it would not have buried it in
section 3.05; on the contrary, it would have either made it a separate
section or located it so as to make it clear that it was indeed
intended as authority for the board to supplement the eligibility
requirements set forth in section 3.04.  For example, it could have
included it in section 3.04 itself, or it could have added it to
section 2.09, which enumerates the board's rulemaking powers.  Its
location, coupled with its wording -- particularly its reference to
"fees for examination" -- convince us that the provision refers only

to the medical examination per se and does not authorize the board to promulgate parts (a)(3) and (a)(6) of the board rule in question.

We next consider section 2.09(a).  In Texas State Board of Examiners in Optometry v. Carp, 412 S.W.2d 307 (Tex. 1967), the Texas Supreme Court dealt with a professional responsibility rule promulgated by the board of examiners under a virtually identical statutory provision.  The court upheld the rule, but it did so only after it examined each provision separately to "determine whether it is related to and consistent with the grounds for cancellation or refusal [of a license] that the Legislature listed" in article 4563, V.T.C.S. Id. at 310.  After undertaking this examination, the court concluded that "the rule's provisions are in harmony with the general objectives of the act and referable to and consistent with one or more of its specific proscriptions." Id. at 313.  The dissent agreed that the test was whether the rule created new and independent grounds or merely "fill[ed] in the details" of or implemented an existing statutory provision, but it disagreed with the majority's conclusion that the rule did the latter.  Id. at 314-15 (Smith, J., dissenting). See also Kee v. Baber, 303 S.W.2d 376 (Tex. 1957).

In Kelly v. Industrial Accident Board, 358 S.W.2d 874 (Tex. Civ. App. - Austin 1962, writ ref'd), the court held that the Industrial Accident Board had no authority to promulgate a rule requiring workmen's compensation claimants to file with the board, on or before the date of the hearing, a written report by their examining physician.  The court stated:

> the Legislature may delegate to State officers, agencies, or administrative bodies the power to enact or promulgate rules and regulations in aid of the statutory authority conferred upon such administrative body.... But the rules and regulations so enacted by the administrative body may not impose additional burdens, conditions or restrictions in excess of or inconsistent with the statutory provisions.

358 S.W.2d at 876-77 (citation omitted) (emphasis added).  The court concluded that the board rule imposed an additional burden or restriction upon claimants, and that in enacting it the board had exceeded its statutory authority.

We think the same is true here.  Section 3.04 of article 4495b lists the requirements that the legislature thought were necessary for an applicant to satisfy in order to be eligible to take the medical examination.  Other provisions in subchapter C of article 4495b impose requirements upon applicants for the examination and for a license to practice medicine.  Section 3.08, for example, lists 21 grounds that

the board may rely upon to deny an application for either the examination or a license.

When one considers subchapter C of article 4495b in its entirety, one cannot help but be convinced that the eligibility requirements set forth in section 3.04 are the only ones that the legislature wanted applicants for the examination to have to satisfy. The board rules at issue here, which require 60 semester hours of non-medical courses that are acceptable to the University of Texas Health Science Centers for admission to medical school and a one-year program of graduate medical training, are quite onerous.  In our opinion, they go far beyond what the legislature intended, and can only be viewed as "additional burdens, conditions or restrictions in excess of or inconsistent with the statutory provisions," Kelly v. Industrial Accident Board, supra, at 876-77, which are not "in harmony with the general objectives of the act and referable to and consistent with one or more of its specific proscriptions," Texas State Board of Examiners in Optometry v. Carp, supra, at 313.  Rules (a)(3) and (a)(6) are therefore not authorized under section 2.09(a) of article 4495b.

Accordingly, in answer to your second and third questions, we conclude that parts (a)(3) and (a)(6) of the board rule in question are invalid because they lack a statutory basis.  We need not address your fourth question.  In answer to your first question, the board's use of the phrase "in its discretion" is not necessarily inconsistent with section 3.05(a) of article 4495b.  That section must be read in light of section 3.08, which lists reasons for refusing an application to take the examination or to obtain a license.  In other words, even if an applicant passes the examination the board could "in its discretion," deny a license to one who violates section 3.08.

S U M M A R Y

Parts (a)(3) and (a)(6) of section 163.1 of the rules and regulations of the Texas State Board of Medical Examiners are invalid.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Jon Bible
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Bill Campbell
Rick Gilpin
Patricia Hinojosa
Jim Moellinger